## Public Copy—Sealed Material Deleted

**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 23-5154**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

IN RE MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF
JUSTICE; CHRISTOPHER A. WRAY, IN HIS OFFICIAL CAPACITY
AS FBI DIRECTOR; FEDERAL BUREAU OF INVESTIGATION,

PETITIONERS.

———————————

**REPLY IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS
TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
MARTIN TOTARO
  *Attorneys, Appellate Staff
  Civil Division, Room 7525
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-5048*

# TABLE OF CONTENTS

**Page**

ARGUMENT:

    Mandamus Is Warranted To Block the Deposition of
the Former President ......................................................................4

    A.    A Former President May Be Deposed About
His Official Conduct, If at All, Only in Exceptional
Circumstances .......................................................................4

        1.  Presidents Are Not Ordinary Third-Party
Witnesses When Asked About Actions Taken
in the Course of Their Official Duties ...................................5

        2.  The Executive Branch Faces Irreparable Injury................6

        3.  Plaintiffs' Other Arguments Are Unavailing .......................8

    B.    The District Court Abused Its Discretion in
Concluding That Extraordinary Circumstances
Exist Here.............................................................................12

CONCLUSION....................................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                      **Page(s)**

*Cheney v. U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004) ..................................................................... 1, 5, 8

*Clinton, In re*,
   973 F.3d 106 (D.C. Cir. 2020) .......................................................... 10

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ................................................................. 1, 2, 5-6, 7

*Sierra Club v. Costle*,
   657 F.2d 298 (D.C. Cir. 1981) ........................................................... 9

*Simplex Time Recorder Co. v. Secretary of Labor*,
   766 F.2d 575 (D.C. Cir. 1985) ............................................................ 5

*Trump v. Mazars USA, LLP*,
   140 S. Ct. 2019 (2020) ...................................................................... 8

*U.S. Dep't of Educ., In re*,
   25 F.4th 692 (9th Cir. 2022) ......................................................... 6, 12

*United States, In re*,
   542 F. App'x 944 (Fed. Cir. 2013) .................................................... 10

*United States v. Burr*,
   25 F. Cas. 187 (No. 14,694) (CC Va. 1807)...................................... 1, 5

## Other Authority:

Order, *In re Murthy*, No. 22-30697 (5th Cir. Jan. 5, 2023) .......................... 6-7

This Court should grant the government's petition for mandamus and direct the district court to quash plaintiffs' extraordinary request to depose a former President about actions he took and discussions he had with senior advisors while conducting his official duties.

Much of plaintiffs' opposition rests on the premise that a civil litigant's request to depose a former President about official conduct should be treated no differently from a request to depose any other "third-party witness." Opp'n 1. That premise has no basis in precedent or common sense. As the Supreme Court has repeatedly admonished, "in no case" is a court "required to proceed against the president as against an ordinary individual." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381-82 (2004) (alteration omitted) (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (No. 14,694) (CC Va. 1807)). The separation-of-powers concerns that arise when a court authorizes the deposition of a former President are equally plain. Given "the singular importance of the President's duties" and "the effect of his actions on countless people," *Nixon v. Fitzgerald*, 457 U.S. 731, 751, 753 (1982), allowing civil litigants to depose a former President as a routine matter would expose Presidents to innumerable demands for testimony after leaving office. The threat of a post-Presidency deluge of third-party subpoenas, in

turn, risks causing a President to "diver[t] . . . his energies" and alter his behavior while in office, *id.* at 751, at significant cost to the Executive Branch and to the public.

Contrary to plaintiffs' contention, these harms to the effective functioning of the Executive Branch cannot be "corrected on appeal" after final judgment. Opp'n 2. Just as in the many cases in which this Court and other courts have granted writs of mandamus to block the deposition of Cabinet officers, it is the deposition itself that causes the injury. For these reasons, the district court correctly recognized that a former President's deposition about official conduct is justified, if at all, only in "extraordinary circumstances." Feb. 23, 2023 Tr. 6 (A12).

The district court clearly abused its discretion, however, in concluding that such extraordinary circumstances exist here. Plaintiffs' opposition only underscores why mandamus is warranted. Plaintiffs contend that the former President's deposition will help them establish whether and to what extent he influenced the FBI's decision to terminate Strzok. But the former President's negative view of Strzok and his strong desire that Strzok be fired are matters of public record. Plaintiffs do not need to confirm that the former President expressed similar views in private.

2

**Material Under Seal Deleted**

Moreover, plaintiffs have already deposed or interviewed, among others, the relevant FBI decisionmaker (Deputy Director Bowdich), FBI Director Wray, the former President's Chief of Staff, and the former Deputy Attorney General. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████.

If asked, witnesses also testified that ███████████████████

███████████████████████████████████████

███████████████████████████████ catalogued by the Justice Department's Office of the Inspector General, which Strzok himself acknowledged was damaging to the Bureau. Plaintiffs are free to argue, if they wish, that the district court should not credit ███████████████

███████. But they have not established any proper basis on this record for deposing a former President of the United States regarding his official conduct in office.

For these reasons and those set forth in the government's petition, this Court should grant the government's request for mandamus and quash the former President's deposition.

3

## ARGUMENT

## Mandamus Is Warranted To Block
## the Deposition of the Former President

### A.    A Former President May Be Deposed About His Official Conduct, If at All, Only in Exceptional Circumstances

Plaintiffs urge that a request to depose a former President about his official conduct is subject to the same scrutiny and legal standards as a request to depose any other "third-party witness."  Opp'n 1-2; *see also* Opp'n 18-20 (arguing that the district court's order fits within the district court's routine "authority to manage discovery matters").  According to plaintiffs, the compelled deposition of a former President causes no harm to the Executive Branch, particularly in the absence of an assertion of Executive privilege.  Opp'n 20-23.  They further assert that the former President should be treated like any other deponent because he was not the "official decisionmaker," and they seek only "to determine whether he improperly influenced official action" by the relevant agency decisionmaker.  Opp'n 24.  None of these assertions withstands scrutiny.

1.    **Presidents Are Not Ordinary Third-Party Witnesses When Asked About Actions Taken in the Course of Their Official Duties**

There is no merit to plaintiffs' view that a former President should be subject to a deposition in civil litigation under the same standards as any other witness. It is well established that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). That principle applies with even greater force to Presidents because of the unique features of that office. Pet. 23-24. As Chief Justice Marshall explained while sitting as a trial judge, "[i]n no case . . . would a court be required to proceed against the president as against an ordinary individual." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381-82 (2004) (alterations in original) (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (No. 14,694) (CC Va. 1807)). Indeed, in a case involving a claim that another former President had a hand in the allegedly unlawful termination of a federal employee, the Supreme Court emphasized that the "President's unique status under the Constitution distinguishes him" even "from other [high-ranking] officials," including Cabinet officers, and demands particular "judicial deference and restraint" in

5

the conduct of litigation against him. *Nixon v. Fitzgerald*, 457 U.S. 731, 750, 753-54 (1982).

### 2.    The Executive Branch Faces Irreparable Injury

Plaintiffs err in urging (Opp'n 20-23) the Executive Branch faces no irreparable injury from a judicial order compelling a *former* President to testify about discussions he had with senior advisers and actions he took while conducting his official duties.  Most significantly, plaintiffs ignore the chilling effect on Presidential decisionmaking and speech that would occur if a President had to worry that every decision affecting issues of concern to the public and the Executive Branch could lead to a post-Presidency deposition.  Pet. 24.  As the Ninth Circuit recently explained in blocking the deposition of a former Secretary of Education, "[t]he threat of having to spend their personal time and resources preparing for and sitting for depositions could hamper and distract officials from their duties *while in office*."  *In re U.S. Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022) (emphasis added); *see* Order at 3, *In re Murthy*, No. 22-30697 (5th Cir. Jan. 5, 2023) (per curiam) ("[A] party seeking the deposition of a high-ranking executive official must show that 'extraordinary circumstances' exist," and "[w]e agree with other circuits that such a showing is equally applicable to former

officials, lest they be ensnared in unnecessary discovery upon leaving office.").

Plaintiffs largely fail to address the implications of their arguments for the Office of the President or the separation of powers. Those implications are profound. Given the "visibility of his office and the effect of his actions on countless people," *Nixon*, 457 U.S. at 752, a President should not be forced to make decisions in office or to choose whose advice to receive or with whom to speak, in the shadow of Rule 45 testimony in post-Presidential litigation. No President exercising the powers of the office should have to pause and think, "If I choose option X, I will be mired in depositions from the day I leave office."

For these reasons, contrary to plaintiffs' contention (Opp'n 22, 25-26), the weighty separation-of-powers concerns implicated by the deposition of a former President do not depend on whether the government later decides to assert executive privilege over the information sought. Although the presence of privileged information may supply an independent basis to object to testimony, a demand for testimony from a former President about his official conduct in office raises separation-of-powers concerns independent from privilege. Indeed, the Supreme Court has recognized that requests for

7

information from the President and his close advisors raise separation-of-

powers concerns even when the information sought is not privileged, *see*

*Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2033-34 (2020) (noting that a

congressional request for the President's personal papers "unavoidably pit[s]

the political branches against one another"), or when executive privilege has

not yet been asserted, *see Cheney*, 542 U.S. at 391.

Nor are plaintiffs correct when they suggest that any harm to the

government could be corrected through "ordinary appellate review."  Opp'n

21 (quotation marks omitted).  A judicial order compelling the former

President to testify causes a separation-of-powers injury that cannot be

remedied after the deposition takes place.  *Cf. Cheney*, 542 U.S. at 381-82 (a

discovery order that threatens "intrusions on the process by which those in

closest operational proximity to the President advise the President" removes

it "from the category of ordinary discovery orders where interlocutory

appellate review is unavailable" (quotation marks omitted)).

### 3.    Plaintiffs' Other Arguments Are Unavailing

Plaintiffs only underscore the flaws in their position when they suggest

that the former President should be treated like any other third-party

witness because he was not the "official decisionmaker," and that they seek

8

to explore only whether he "improperly influenced" the ultimate agency decisionmaker. Opp'n 24-25.  The President is not the ultimate decisionmaker for most decisions made by federal agencies.  Those decisions are made instead by the heads of the relevant agencies or one of their subordinates.  At the same time, it is not unusual for a President to convey his views to a relevant agency decisionmaker, particularly where the decision is of significant interest and importance to the public and the Executive Branch. As this Court has recognized, "[o]ur form of government simply could not function effectively or rationally if key executive policymakers were isolated from each other and from the Chief Executive."  *Sierra Club v. Costle*, 657 F.2d 298, 406 (D.C. Cir. 1981).  If accepted, plaintiffs' claim that a former President can be deposed about his official activities whenever there is any allegation or evidence that he sought to influence a decision made by an agency official would expose a President to deposition on innumerable matters.

Plaintiffs' remaining arguments in favor of treating the former President like an ordinary litigant in these circumstances fare no better. Plaintiffs suggest that the former President's deposition is appropriate because he was "personally involved in the events underlying Plaintiffs'

9

claims."  Opp'n 22.  But that is routinely the case when a party seeks to

depose a current or former high-level official.  *E.g.*, *In re Clinton*, 973 F.3d

106, 111 (D.C. Cir. 2020) (granting mandamus to quash deposition of former

Secretary of State that would have addressed "her reasons for using a

private server and her understanding of the State Department's records-

management obligations"); *In re United States*, 542 F. App'x 944, 946 (Fed.

Cir. 2013) (granting mandamus to block the deposition of the Chairman of

the Board of Governors of the Federal Reserve even though he was allegedly

"a key decision maker" regarding the claims at issue, he "had knowledge of

various relevant aspects of the case," and he "had provided testimony before

Congress, given various public speeches and written a book about the . . .

events").

Plaintiffs' contention that the former President "has demonstrated

greater availability for civil litigation than the typical former president,"

Opp'n 22, is likewise beside the point.  The former President has brought

civil litigation in his own name, and he has been deposed in connection with

civil litigation against him in his personal capacity.  To the government's

knowledge, however, this is the only case in which a court has approved the

compelled deposition of former President Trump with respect to his official

10

conduct while in office.  Such a deposition implicates the constitutional

separation of powers, and mandamus is warranted for that reason.

Finally, the government's decision not to seek further review of the

district court's order allowing the deposition of the current FBI Director,

Opp'n 22-23, only strengthens the case for mandamus.  The district court had

previously stated that "the issue [of the former President's deposition] could

become moot if [plaintiffs] deposed Director Wray first and he says he never

discussed the termination of Mr. Strzok or the President's views about it

with Mr. Bowdich at all."  Feb. 23, 2023 Tr. 35 (A41).  The government then

elected to forgo further objections to the deposition of Director Wray, on the

condition that he be deposed first.  And Director Wray testified that ████

████████████████████████████████████████████████████████████████

████████████.  Nonetheless, the district court denied the government's

subsequent motion to reconsider the deposition of the former President

without even waiting for plaintiffs to respond.  Pet. 18-19, 27-28.

In sum, there is no merit to plaintiffs' assertion that a request to

depose a former President about his official activities should be treated the

same as a request to depose any other third-party witness.  As the district

court correctly recognized, the deposition of a former President regarding

11

official conduct is justified, if at all, only in "extraordinary circumstances."

Feb. 23, 2023 Tr. 6 (A12).

### B.    The District Court Abused Its Discretion in Concluding That Extraordinary Circumstances Exist Here

Plaintiffs do not come close to meeting their burden to show the

extraordinary circumstances necessary to depose a former President.  The

former President's testimony is neither "essential" to Strzok's retaliation

claim, *U.S. Department of Education*, 25 F.4th at 703, nor likely to provide

information vital to Strzok's claim that is not already available from other

sources.  *See* Pet. 26-32.  Plaintiffs' opposition fails to demonstrate

otherwise.[1]

Like the district court, plaintiffs contend (Opp'n 29) that the former

President's public statements criticizing Strzok, demanding his termination,

and later taking credit for his firing, present extraordinary circumstances

that justify his deposition.  According to plaintiffs, the deposition will allow

them to investigate "how extensively Trump personally pressed for Strzok's

---

[1] Strzok and Lisa Page also brought Privacy Act claims based on the release of a redacted subset of text messages they exchanged on their FBI-issued phones.  Pet. 32 n.2.  They do not explain how a deposition of the former President is necessary to those claims under any standard.  Opp'n 20 n.9.  Accordingly, the government does not seek here to correct plaintiffs' incomplete and inaccurate recitation of the facts relevant to that claim.

termination during the identified Oval Office meetings," Opp'n 31, and whether he "influenced" the FBI's decision, Opp'n 4.

Plaintiffs have already explored these topics extensively in discovery, and the former President's deposition is unlikely to provide them with relevant evidence they do not already possess. As the government explained in its petition, Pet. 29-30, the former President's public statements themselves provide "a viable substitute for the former president's testimony," Opp'n 33. Those statements leave no doubt as to the former President's views regarding Strzok, including his strong desire that Strzok be fired. It is unnecessary for plaintiffs to confirm that the former President expressed the same views in Oval Office meetings that he expressed publicly. And even if it were necessary, senior officials who met with former President Trump have already testified that ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████ Dkt. No. 115-1, Ex. C ¶3 (Kelly Decl.).███████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

13

**Material Under Seal Deleted**

██████████████████████████████████████████

██████████████████████████████████████████

████████████

      Plaintiffs have also had ample opportunity to explore whether former President Trump directly pressed the FBI to fire Strzok during meetings at the White House.  They have deposed or interviewed a number of high-ranking officials who attended those meetings, including the FBI Director, the Deputy Attorney General, and the former President's Chief of Staff.  ███

███████████████████████████████████████████

█████████████████████████.  Pet. 14-15, 18-19, 27-28; July 6, 2023 Minute Order (A6) ("[T]o the extent the individuals deposed to date recalled the events in question, their testimony did not advance plaintiffs' theory that the former President was involved in the decision making at issue in this case[ ] . . . .").  That testimony is consistent with ████████████

████████████████████████████████████████

█████████████████████; Pet. 28.  That multiple alternative sources failed to corroborate plaintiffs' speculation about the former President's role in Strzok's termination is hardly a basis to allow the former President's deposition to go forward.

To the extent plaintiffs seek the deposition of a former President in the hope that his testimony might provide a basis for impeaching the testimony of others, that prospect will routinely exist whenever a party seeks to depose a high-level official.  Yet allowing such depositions to take place has been, and should be, an extraordinarily rare exception.

Allowing plaintiffs to take the former President's deposition would be particularly unwarranted on this factual record.  The former President's views would be relevant only if they affected Bowdich's decision to dismiss Strzok.  The former President's uncorroborated and implausible claim that he fired Strzok is not sufficient.  *Cf.* Opp'n 16-17 (quoting the former President stating that he "fire[d]" Lisa Page from the FBI, even though it is undisputed that she resigned).  The evidence in this case shows that Trump was not involved in Bowdich's decision.  *See* Pet. 9-11, 26-28.  Most importantly, Bowdich's sworn testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Pet. 11,

14-15; *see also, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15

Material Under Seal Deleted

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

Dkt. No. 30-5, at 18 (Strzok acknowledging that his misconduct "without question" represented "horrible judgment"); OIG Report xi-xii.

Plaintiffs also argue that the FBI's decision to terminate Strzok was "extraordinary on its face," that the FBI's decisionmaking process was unusual, and that Strzok was punished more severely than similarly situated employees.  Opp'n 29.  The government contests these assertions.  Every FBI official to consider his case, including Assistant Director Candice Will, recognized that the "nature and scope" of Strzok's misconduct caused immense harm to the FBI and "certainly warrant[ed] dismissal."  Dkt. No. 30-5, at 23.  Deputy Director Bowdich explained that, in his "23 years in the FBI," he "ha[d] not seen a more impactful series of missteps that has called into question the entire organization and more thoroughly damaged the FBI's reputation."  Dkt. 30-7, at 2.

The record nevertheless establishes that Deputy Director Bowdich's decision to reinstate the FBI Office of Professional Responsibility staff dismissal recommendation, which reversed Assistant Director's Will's more

16

**Material Under Seal Deleted**

lenient disciplinary decision, was neither unprecedented nor remarkable

under the circumstances. *See, e.g.,* ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

Will similarly testified that ██████████████████████████████

████████████████████████████████████████████

██████████████████████

17

In any event, plaintiffs' grievances about the FBI's decisionmaking process provide no justification for deposing the former President. Plaintiffs do not suggest that the former President can offer any insight into the FBI's disciplinary process or the decisions the agency has made with respect to other employees. And, of course, plaintiffs are free to cite any purportedly unusual circumstances surrounding Strzok's termination to support their claim that he was fired for reasons other than his misconduct. They do not need the former President's testimony to do so.

## CONCLUSION

The petition for a writ of mandamus should be granted.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MARK R. FREEMAN
GERARD SINZDAK
*/s/ Martin Totaro*
MARTIN TOTARO
*Attorneys, Appellate Staff*
*Civil Division, Room 7525*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5048*
*martin.v.totaro@usdoj.gov*

August 2023

18

## CERTIFICATE OF COMPLIANCE

I certify that this reply complies with the type-volume and typeface/typestyle limitations of Federal Rule of Appellate Procedure 21(d) because it contains 3591 words (excluding exempted matter) according to the count of Microsoft Word, and has been prepared in proportional CenturyExpd BT 14-point font.

## CERTIFICATE OF SERVICE

I certify that, on August 9, 2023, I electronically filed the sealed version of this reply by email to the Court's sealed filings e-mail address: SealedFilings@cadc.uscourts.gov, and that, on August 9, 2023, I electronically filed a public version of this reply through this Court's CM/ECF system.  I also certify that eight copies of the sealed reply and eight copies of the public reply will be sent to the D.C. Circuit via first-class mail.

I further certify that, on August 9, 2023, four copies of the attached reply (two copies of the public reply and two copies of the sealed reply) were served on the following counsel by e-mail and first-class mail:

Aitan D. Goelman
Christopher R. MacColl
Zuckerman Spaeder LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
AGoelman@zuckerman.com
CMacColl@zuckerman.com

*Counsel for Peter Strzok*

Amy Jeffress
Robert Katerberg
Kaitlin Konkel
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Amy.jeffress@aporter.com
Robert.katerberg@arnoldporter.com
Kaitlin.konkel@arnoldporter.com

*Counsel for Lisa Page*

Richard A. Salzman
Heller, Huron, Certkof & Salzman PLLC
1730 M Street NW, Suite 412
Washington, DC 20036
salzman@hellerhuron.com

Finally, I certify that, on August 9, 2023, four copies of the attached reply (two copies of the public reply and two copies of the sealed reply) were sent to the Honorable Amy Berman Jackson, U.S. District Court Judge for the District of Columbia, by email and first-class mail.

*/s/ Martin Totaro*
Martin Totaro